Bigger, J.
By a stipulation of.the parties to this suit, the question submitted to the court for decision is limited to a determination of whether, under a certain deed dated December 36, 1896, and executed and delivered by George M. Peters and Clinton D. Firestone, the property therein described belonging to George M. Peters and Clinton D. Firestone, partners doing business as the Columbus. Buggy Company and Peters Dash Company, was thereby remised, released, relinquished and quit-claimed to the said Firestone, in trust for the benefit of said partnership, to be used by him to settle and compromise with the creditors of said partnership and pay off the debts thereof, and whether, if any surplus of said property should remain after the settlement, compromise and payment of said debts, the said Firestone should account to said partnership for the same; and that the issue between the parties whether the property of said partnership so .remised, relinquished, released and quit-claimed to said Firestone was or was not sufficient to settle with the creditors thereof and pay their claims, shall not be heard and determined at this hearing.
By the same stipulation or agreement, certain other matters are agreed upon and to be considered by the .court in so far as they may be found competent, relevant, admissible and material. These, which are somewhat lengthy, I will not stop to recite.
It is plaintiff’s contention, first, that the deed itself by its very terms makes Firestone a trustee, a,nd, second, that by virtue of the fiduciary relation existing between George M. Peters and C. D. Firestone, equity makes him a trustee. This is denied by the defendant, who claims that the deed conveyed all of the interest of'George M. Peters in the partnership assets, both legal and equitable, to C. D. Firestone, and that this plainly appears from the terms of the deed itself.
Some oral evidence was heard in addition to the written stipulation under the well-known rule of construction, which admits *611 evidence of this character on a question of construction of written instruments, so as to place the court as nearly as possible in the position of the parties at the time of the .execution of the instrument, and to enable the court to construe it in the light reflected upon it by the circumstances and conditions surrounding the parties at the time the instrument was executed.
From the stipulation and the oral evidence, it appears that George M. Peters and C. D. Firestone, as partners doing business as the Columbus Buggy Company and the Peters Dash Company, had made an assignment of all the partnership property for the benefit of their creditors in August preceding the execution of this deed, which deed was executed and delivered on December 16, 1896; that in July, 1897, an order was made by the probate court terminating the assignment and ordering the assignees to reconvey the property assigned to C. D. Firestone, and that C. D. Firestone immediately thereafter took possession of the property; that Firestone effected a settlement and compromise with all the partnership creditors and paid their claims under the terms of the compromise. It further appears that, in making the settlement, Firestone made use of the moneys transferred to him by the assignees, and also made use of the other property conveyed to him for the same purpose, and that there was no account by Firestone to Peters, who died in January, 1897, nor since, to his estate.
This deed in the first clause recites the fact that the partners had made an assignment of the partnership assets to the assignees, naming them, for the benefit of their creditors, and that the assignment was then pending in the Probate Court of Franklin County. In the next clause, it recites that it is desirable that a proposition to compromise and settle the debts and obligations of the partnership should be made by one or both of the partners. In the next clause, it is stated that for the purpose of enabling Clinton D. Firestone to make an offer of compromise, liquidation, and settlement to the creditors of said partnership, the said George M. Peters is ready and willing to relinquish all his right, title, estate and' interest in said partnership property and assets,' and in the business of said partnership, *612 including the good will thereof, and all the estate, right, title and interest reserved to him in said deed of assignment. Then follows the granting clause which provides that George M. Peters, in consideration of one dollar to him paid by Firestone, the receipt whereof is acknowledged, and in consideration of the covenants, agreements and conditions hereinafter contained and set forth to be kept and performed by Firestone, covenants and agrees to and does remise, release, relinquish and quit-claim to Firestone and his heirs and assigns forever, all the right, title, estate and interest of Peters in the partnership property, describing it.
Then follows the. habendum clause in this language: To have and to hold unto the said Clinton D. Firestone, his heirs and assigns forever, each and every item, piece and parcel of the said above-named property, with all the privileges and appur/tenances thereof or thereunto belonging, provided, nevertheless, and these presents are upon this express condition, that the said C. D. Firestone has agreed and does hereby agree to use his best efforts and to endeavor to obtain the assent and acceptance of the offer of compromise, settlement and liquidation so to be made by him by each and all of the creditors of the said partnership. Now, if the said Clinton D. Firestone shall not obtain the assent or acceptance of said offer of compromise and settlement by 87 per cent, of all the creditors of said partnership in amount, then this release, transfer, quit-claim and settlement shall be void, if the said George M. Peters, or his executors and administrators, so elect, otherwise to be and remain in full force and virtue in law forever.
' This is followed by an agreement- of the parties (and the deed is signed by both parties), to the effect that each of the parties shall remain liable to the other for his proportionate part of all debts pyisting against the partnership and of any judgment that may be rendered against them as partners, and for their proportionate part of, the counsel fees and court costs incurred in defending against actions brought against them as partners, and that neither shall confess judgment against the partnership without the consent of the other; and each agrees to use all rea *613 sonable effort to notify the other of any suits that may be brought against them and to defend the same as far as there may be any legal defense against the same.
Then follows an agreement on the part of Firestone for himself and for the officers and employes of any new firm or company-into whose possession the partnership books may pass, so far as his control and influence can require, that Peters and his executors and administrators shall have his and their earnest co-operation and assistance in any litigation against the said Peters or his estate growing out of the partnership, and that this shall include assistance in the production, inspection or explanation of the books and papers of the partnership.
The deed is signed by both parties and signed and acknowledged in the presence of witnesses. It appears from the evidence that at the time of the execution of this deed, Peters was very ill and feeble, and that he died in about one month thereafter. Very elaborate and able briefs have been submitted to the court by counsel, which have been read and re-read and careful consideration given to the respective contentions of counsel.
It would consume too much time to take up and discuss at great length and consider all of the contentions and decisions of courts and statements of rules of law by text-writers which have been cited on the subject of trusts and trust deeds, and I must content myself with a statement of the conclusion reached, and, briefly, the considerations which lead me to that conclusion.
In the first place, it seems to me clear that this deed effected an absolute conveyance of the legal title to all of the partnership property, in so far as the interest of Peters in that property was concerned, upon a condition. That condition was that Firestone should use his best efforts to obtain the assent and acceptance of the offer of compromise and settlement by each and all of the creditors of the partnership, and that upon compliance on the part of Firestone with this condition, and, further, that his efforts should result in obtaining the consent of 87 per cent, in amount of the creditors to the terms of the compromise and settlement, then the deed took effect as an abso *614 lute conveyance of the legal title to Firestone. It is admitted that his efforts resulted in securing the assent of all the creditors to the terms of the compromise and that settlement was made with them by Firestone'in accordance with the terms.of the compromise. Firestone, therefore, having complied with the conditions prescribed in the deed as to securing the assent and acceptance of 87 per cent, in amount of the creditors, the deed became absolute, in that it conveyed to Firestone the legal title to all of the partnership assets, and authorized and empowered him to make use of the partnership assets in carrying out the terms of the settlement.
But this does not determine that the conveyance to Firestone was a bargain and sale to Firestone of all of the interest of Peters in the partnership assets, both legal and equitable. This deed recites the purposes for which the property was conveyed. It is stated that:
“For the purpose of enabling Clinton D. Firestone to make an offer of compromise, liquidation and settlement to the creditors of such partnership, the said George M. Peters is ready and willing to relinquish all his right, title, estate and interest in said partnership property and assets, and in the business of said partnership, including the good will thereof, and all the estate, right, title and interest reserved to him in said deed of assignment.”
Here we have a plain and unambiguous statement of the purpose of Peters in making the conveyance. He recites that he is willing to make the conveyance for the purpose stated. This, of course, repels the idea that he was willing to make it • for any other purpose. It is suggested by counsel for the defendant in argument that the conveyance was made by Peters for the purpose of protecting his private estate, and that the terms of the deed show that to the extent of 87 per cent, of the partnership indebtedness his private estate was protected. But this conclusion is not borne out' by the language of the deed. In fact, the agreement did not obligate Firestone to pay 87 per cent, of the partnership indebtedness, or any other percentage of that indebtedness, unless the assets of the partnership were sufficient for. that purpose. By the terms of this agreement, *615 Firestone only undertook to use his best efforts to secure from all of the partnership creditors, an acceptance of the offer of compromise, and did not obligate him to pay the debts or any part of them. On the contrary, the deed itself plainly repels by its language that construction, for it expressly provides that both Peters and Firestone shall remain each liable to the other for his proportionate share of the partnership debts. Had this been the intention of the parties, the deed would have recited that to the extent of 13 per cent, of the partnership indebtedness, each should remain liable to the othpr for his proportionate share thereof. The agreement recites that it is desirable that such a compromise should be effected. This was desired, therefore, as much by Firestone as by Peters. If this was desirable, then it was the duty of Firestone to endeavor to effect it, and his efforts to do so could not, it seems to me, constitute a consideration for the conveyance of this property to him by his partner, who was at the time sick and unable to take part in these negotiations.
Nor will the deed bear the construction claimed for it by defendant’s counsel, that Firestone was endeavoring to pay out of his own private means the cost and expense of making the compromise. ’ Assuming that he should have incurred cost and expense, in doing so he was and will be entitled to reimburse himself out of the partnership assets for it. If this had been the intention of the parties, we w.ould reasonably expect to find an agreement on the part of Firestone to pay some definite proportion of the partnership indebtedness, and thus exonerate Peters to that extent, which, had that been the agreement, would have required of Firestone that he bear the expense of effecting such a compromise, provided, at least, the partnership assets would not pay that proportion of the indebtedness, and also the costs and expenses of effecting the compromise. But, under the terms of the contract, Firestone.was as much entitled to pay the costs and expense incident to effecting the compromise and settlement out of the partnership assets as to pay the debts themselves out of it.
Under the terms of the stipulation, the court can not make any finding as to the value of the property of this partnership, *616 and no evidence was offered on that subject. If the value of the partnership assets was in excess of that needed to effect the compromise and settlement upon the terms proposed, the inquiry suggests itself, what consideration appears in this deed for the conveyance of that excess to Firestone. Under its terms, Firestone agrees to pay none of the debts of the partnership, except in so far as the partnership assets will suffice for such payment. What consideration of any value passed to Firestone as an inducement for him to convey this excess of the value of the partnership assets over the liabilities under the compromise settlement proposed? He was still to remain liable under its terms as before, for all partnership debts. Under its terms he was to be released from no financial obligation that rested upon him before its execution. If, on the other hand, the value of the partnership assets was only equal to or less than the sum necessary to effect the settlement, there would be no inducement to Firestone to make a purchase from Peters of his interest, and no reason is apparent why he should desire to make a purchase instead of simply taking the legal title to effect the settlement of their joint indebtedness. But, whatever might have been the purpose of Firestone, it is inconceivable to me, that if this had been intended by the parties as a conveyance of both the legal and equitable estate of Peters, the language employed in making this contract would have been used. The words “bargain and sell” are not used. It is only “remise, release, relinquish, and quit-claim. ’ ’ There is, as I have said, no consideration which should induce Peters to convey absolutely his property to his partner, if it was in excess of that necessary to effect the compromise and settlement, while he, still under the plain terms of the contract, remained liable, as before, for all the unpaid debts of the partnership. It is, of course, no answer to this consideration to say that this was.a deed absolute upon the happening of the conditions stated. There is no question but that it was a deed absolute and that it absolutely conveyed to Firestone all the legal estate of Peters in this property and would be effective as between Peters and anyone to whom Firestone should sell the property to convey the entire estate to such pur *617 chaser. But as the only purpose of the conveyance to Firestone was to enable him to compromise and make a settlement with the creditors, for any residue remaining after he had made such payment, ,& .trust resulted inJIayor of Peters or his estate. As to the character of the trust created, IaSTof^piiiioiran express trust was created, because it specially provided the purpose for which it was conveyed. It was to be used by Firestone for the purpose stated, but if any residue remained, a trust resulted out of the very terms of the deed itself in favor of Peters or his estate as to .the residue. After a careful consideration of the deed and the arguments of counsel, I am of the opinion this deed is upon its face a trust deed and this view is, it appears to me, strengthened when we consider the relationship of these parties to each other.
As to the right of the plaintiff to maintain this action, I am of the opinion this question can not be raised upon this hearing. The probate court being a court of .plenary and exclusive jurisdiction in the matter of the appointment of administrators, its record imports absolute verity and can not be collaterally impeached, in the absence of an express showing from the record itself that it was without jurisdiction. This was expressly decided in Shrover v. Richmond, 16 Ohio St., 455, and has been repeatedly approved since.
As to the claim that the judgment of the probate court by which this property was ordered and directed by that court to be turned over to Firestone when the assignment was terminated estops the plaintiff here, I am clear it had no such effect. By the deed of Peters, he had conveyed all his right, title and interest in the property to Firestone for the express purpose of enabling Firestone to carry out the terms of the compromise and settlement, and that was the purpose of raising the assignment. It was for the very purpose of enabling Firestone to carry out the terms of the deed and contract between Peters and Firestone that the property was ordered by the probate court to be turned over to Firestone by the assignees, but this was in no sense a finding and judgment by that court that no trust relationship was created as between Peters and Firestone. *618 by the deed, and it had no jurisdiction to decide any such question. Nor can the court find upon the evidence now before it that the plaintiff is estopped to assert this equitable right upon the ground of her laches. Laches which is a species of estoppel is only available where the proof shows that the person to be estopped by the laches had knowledge of the equitable right which it is sought to assert. Laches is pleaded as a defense, and, of course, the defendant has the burden of proving it. To estop the plaintiff it would seem that there must be evidence to show that she knew that there was a residuum after paying the debts of the partnership, for otherwise there would be no liability to Peters or his estate on the part of Firestone. There is no evidence whatever before the court that she had any such knowledge for any specific period of time. Mere lapse of time alone is not sufficient according to all the authorities.
After giving to this case the most careful consideration, I am convinced this deed created a trust which was an express trust, to the extent that it provided the purpose or use which was to be made by Firestone of the property, and that out of this express trust and resulting from it is a trust in' favor of the estate of Peters for one-half of the residuum, if any remained after effecting the settlement with the partnership creditors.
There is no language in this deed which indicates that it was a bargain and sale. Considering the relationship of the parties to the contract and the legal duties and obligations resting upon the partners by virtue of that relationship 'and the fact that the purpose for which the conveyance was made is plainly and unambiguously stated in the deed, excluding the idea that the conveyance was for any other purpose, the ab-' sence of any apparent reason on the part of Peters for such conveyance as the defendant claims, if the property conveyed was of greater value that the amount of the compromise settlement, and the equal absence of any reason on the part of Firestone to desire or insist upon any such conveyance, if the value was equal to or less than the amount of the compromise settlement, leads me to the irresistible conclusion that no such conveyance as defendant claims was in the contemplation of the parties *619 at the time of the making of this deed and contract. This seems to me to be clear from the language of the deed itself and that conclusion is strengthened by the other consideration stated.